**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **RANDY CURT MCBRIDE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:22-cv-689-RAH-CWB** |
| | ) | |
| **BART SHANNON WATKINS,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Defendants' Partial Motion to Dismiss and Motion to Strike Portions of Plaintiff's Complaint. (Doc. 23). As set forth below, the Magistrate Judge concludes that the motion is due to be granted in part and denied in part.

### I.      Introduction

Randy Curt McBride ("Plaintiff") filed this action on December 6, 2022 to assert various theories for redress against Autauga County, Deputy Bart S. Watkins, and Dispatcher Scarlet McGowin (collectively, "Defendants"). (Doc. 1). Plaintiff filed an amended complaint on June 6, 2023 that is now the operative pleading setting out his claims. (Doc. 21). The amended complaint asserts multiple constitutional violations and multiple state law torts—all arising from Plaintiff's detention, arrest, and bond on December 18-19, 2020. (*Id.*). Defendants have countered that certain of Plaintiff's claims and requests for relief are due to be dismissed because they fail to satisfy the pleading requirements of the Federal Rules of Civil Procedure or are otherwise improper. (Doc. 23). Plaintiff in turn contends that the amended complaint has been properly pleaded and should be permitted to proceed *in toto*. (Docs. 29 and 30).

1

## II.    Factual Background

The circumstances giving rise to Plaintiff's claims began with an 8:00 p.m. call to 911 wherein Plaintiff sought assistance in connection with an alleged attack by his domestic partner, Jason Galloway.  (Doc. 21 at p. 4, ¶ 7).  Deputy Watkins responded to the scene and directed Plaintiff to transport Galloway to a bus station in Montgomery.  (*Id.* at ¶ 8).  Plaintiff alleges that Galloway was intoxicated and uncooperative during the transport, which led Plaintiff again to call the Autauga County Sheriff's Office for assistance.  (*Id.* at p. 5, ¶¶ 9-10).  According to Plaintiff, Deputy Watkins responded to the scene and again directed that Plaintiff take Galloway to the Montgomery bus station.  (*Id.* at ¶ 11).  Once arriving at the bus station at approximately 10:30 p.m. Plaintiff once again called 911 for assistance in dealing with the intoxicated Galloway. (*Id.* at ¶ 13).  Officers from the Montgomery Police Department responded, prohibited Galloway from boarding the bus in his intoxicated state, and instructed both Plaintiff and Galloway to leave or face arrest.  (*Id.*).  Plaintiff then drove Galloway to the Autauga County Sheriff's Office. (*Id.* at ¶¶ 14-15).

Plaintiff and Galloway arrived at the Autauga County Sheriff's Office at approximately 11:00 p.m.  (*Id.* at ¶ 16).  Plaintiff alleges that McGowin falsely told Deputy Watkins that Plaintiff and Galloway were arguing.  (*Id.*).  Deputy Watkins then discussed the matter with Plaintiff and Galloway—during which time Deputy Watkins allegedly became angry and verbally abusive. (*Id.* at pp. 6-7, ¶¶ 17-30).  During the exchange, Galloway was arrested for public intoxication and Plaintiff was arrested for "domestic violence, harassment."  (*Id.* at p. 7, ¶¶ 27-28).  Plaintiff contends that Deputy Watkins made false allegations in the arrest affidavit by listing Plaintiff as the aggressor in the initial dispute with Galloway.  (*Id.* at ¶ 30; *Id.* at p. 9, ¶ 40; *Id.* at p. 12, ¶¶ 55-56).

Plaintiff's bond was set at $2,000, which Plaintiff contends was discriminatory due to his status as an African American.  (*Id*. at p. 8, ¶ 37).  Plaintiff further asserts that Autauga County has engaged in a pattern of racial discrimination in the setting of bond amounts.  (*Id*. at ¶ 38). Plaintiff likewise asserts that he was subjected to a 24-hour hold as the result of an unlawful "custom, rule, regulation, and/or pattern of practice" by Autauga County.  (*Id*. at p. 10, ¶¶ 46-48). And Plaintiff asserts that he was denied production of various evidentiary materials relating to the incident.  (*Id*. at p. 9, ¶ 39; *Id*. at p. 10, ¶ 41; *Id*. at p. 11, ¶ 50).  Plaintiff ultimately "was acquitted on 3/11/2021 for lack of probable cause."  (*Id.* at ¶ 41).

## III.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss an action for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6). In order to survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff."  *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).  The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "The particularity rule serves an important purpose in fraud actions by alerting

3

defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation omitted).  According to the Eleventh Circuit, a complaint satisfies Rule 9(b) if it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) ("… Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud.").  Nonetheless, "this does not require every element to be stated with particularity, but rather the 'pleader must use  more than generalized or conclusory statements setting out the fraud.'" *Buckmasters, Ltd. v. Action Archery, Inc.*, 915 F. Supp. 1188, 1194 (M.D. Ala. 1996) (quoting *Mays v. United Ins. Co. of America*, 853 F. Supp. 1386, 1389 (M.D. Ala. 1994)).  Rule 9(b) also must be read "in conjunction with Rule 8(a)." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997); *see also Clausen,* 290 F.3d at 1310.

## IV.   Discussion

### A.   Autauga County is due to be dismissed as a defendant on all claims.

The amended complaint alleges that Autauga County "is a municipal corporation within the purview of the Middle District Court and acts as employer for Watkins and McGowin." (Doc. 21 at p. 3).  Plaintiff seeks to hold Autauga County liable "for its unconstitutional customs

and / or patterns of practice in regards to its blatant racism, failure to produce court ordered evidence, and its 24-hour unconstitutional holds" and because it "was complicit with multiple arresting agencies within the purview of Autauga County and their use of an unconstitutional 24-hour mandatory hold … as a form of pretrial punishment and / or the presumption of pretrial guilt." (Doc. 21 at pp. 2-3). Autauga County argues that it "cannot be held liable as a matter of law for any alleged failures or violations of the Sheriff or his employees." (Doc. 23 at p. 1, ¶ 2) (citing *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997), *King v. Colbert County*, 620 So. 2d 623 (Ala. 1993), and *Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987)).

Plaintiff responds that "*Monell v. Department of Social Services* open[s] the door to hold counties liable for unconstitutional practices and or customs." (Doc. 30 at p. 13). Plaintiff further asserts that pursuant to *McMillian v. Monroe County,* 520 U.S. 781 (1997), "[a] sheriff is a county policymaker even though he is a state employee, [because] in the course of his duty he is creating county policy." (Doc. 30 at p. 14). Plaintiff thus contends that Autauga County "is still liable for an adopted policy and or custom that is unconstitutional." (*Id*. at p. 15).

But it simply cannot be disputed here that Autauga County is not the authoritative body relevant to Plaintiff's claims. In *McMillian*, the United States Supreme Court agreed with the Eleventh Circuit that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." 520 U.S. at 793 (emphasis added); *see also Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006) ("Sheriffs are not county employees ... particularly for purposes of imposing respondeat superior liability upon the county. [D]eputies ... are likewise not county employees."); *Cofield v. Randolph County Commission*, 844 F. Supp. 1499, 1501 (M.D. Ala. 1994). There are no facts or legal authorities cited in Plaintiff's briefing that would support the proposition that the acts or omissions of the

Autauga County Sheriff's Office are attributable to Autauga County or that the sheriff is a policymaker for Autauga County.  Nor are there any facts or legal authorities cited that would support liability against Autauga County for any alleged discrimination in setting bond amounts. As the United States Supreme Court has made clear, the authority vested in counties under Alabama law "do[es] not include any provision in the area of law enforcement."  *McMillan*, 520 U.S. at 790.  Accordingly, to the extent Plaintiff is attempting to hold Autauga County liable for the alleged discriminatory acts or omissions of the Autauga County Sheriff's Office, an employee thereof, or any other state official, all such efforts fail to state a claim upon which relief may be granted, and Autauga County is due to be dismissed—regardless of the underlying theory. *See, e.g., Corbitt v. Henry County Commission*, No. 1:22-CV-693-RAH-KFP, 2023 WL 3901801 (M.D. Ala. June 8, 2023).

**B. Deputy Watkins is entitled to be dismissed as a defendant on all state law claims and on all federal law claims seeking monetary damages against him in his official capacity.**

Deputy Watkins does not seek to be dismissed in his individual capacity with respect to Claims One, Three, and Four.  (Doc. 23 at p. 1, ¶ 1).  Those claims thus will proceed.  However, dismissal is being sought as to all state law claims against Deputy Watkins and all federal law claims for damages against Deputy Watkins in his official capacity.  (Doc. 24 at pp. 7-8).

Deputy Watkins argues that he, "as the alter ego of the Sheriff of Autauga County, is a State Officer who is entitled to share fully in the State's immunity from civil actions set forth in Article I, § 14."  (Doc. 23 at p. 2, ¶ 2) (citing *Ex parte Donaldson*, 80 So. 3d 895, 898-99 (Ala. 2011)).  Deputy Watkins asserts that "Sheriffs – and, by virtue of their status as a sheriff's alter ego, their deputies – are specifically named in Ala. Const. 1901, Art. V, § 112 as one of just nine constitutionally enumerated State officers" and that "Article I, § 14 of the

Alabama Constitution provides that the State of Alabama has absolute immunity from all claims." (Doc. 24 at p. 7).  Plaintiff appears to acknowledge that generally "under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity" (citing *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996)); however, Plaintiff argues that certain claims are <u>not</u> barred by § 14 immunity.  (Doc. 30 at p. 9, ¶ 3).  Plaintiff specifically contends that "Watkins acted in bad faith, not attempting to reasonably/rationally apply a statute, but basically created a crime where none existed as retaliation for Plaintiff[']s consistent requests for help" (Doc. 30 at p. 7) and that "Watkins can't claim immunity based on the fact that creating crimes that doesn't [sic] exist and arresting for fake allegations are not a function of the office of law enforcement" (*Id.* at p. 8).

It is settled that Alabama law provides for two forms of immunity: state immunity and state-agent immunity.  *See Ex parte Donaldson*, 80 So. 3d 895, 900 (Ala. 2011) ("State immunity and State-agent immunity are 'two different forms of immunity,' and those who qualify for State immunity 'are treated differently under Alabama law' because they are constitutional officers.") (quoting *Suttles v. Roy*, 75 So. 3d 90, 93 (Ala. 2010)).  With respect to state immunity, "Article I, § 14, Const. of Ala. 1901, states that 'the State of Alabama shall never be made a defendant in any court of law or equity.'"  *Donaldson*, 80 So. 3d at 897.  As constitutional officers listed under Article V, § 112, Const. of Ala. 1901, sheriffs generally "enjoy [s]tate immunity under § 14 from actions against them in their individual capacities for acts they performed in the line and scope of their employment."  *Id*. at 897-98 (quoting *Suttles*, 75 So. 3d at 94).  "Suits against such officers for actions taken in the line and scope of their employment inherently constitute actions against the [state of Alabama], and such actions are prohibited by § 14."  *Id*. at 898 (quoting *Ex parte Shelley*, 53 So. 3d 887, 895 (Ala. 2009)).

The state immunity afforded sheriffs extends to deputy sheriffs because "the acts of the deputy sheriff are [considered] the acts of the sheriff." *Donaldson*, 80 So. 3d at 898 (quoting *Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994)); *see also* Ala. Code § 36-22-3(4) ("It shall be the duty of sheriffs in their respective counties, <u>by themselves or deputies</u>, to ferret out crime, to apprehend and arrest criminals and, insofar as within their power, to secure evidence of crimes ... and to present a report of the evidence so secured to the district attorney... .") (emphasis added). Therefore, "[b]ecause sheriffs are constitutional officers and because deputy sheriffs act on behalf of sheriffs as alter egos, a claim for monetary damages made against a deputy sheriff in his or her individual capacity is barred by the doctrine of [s]tate immunity whenever the acts that form the basis of the alleged liability were being performed within the line and scope of the deputy sheriff's employment." *Donaldson*, 80 So. 3d at 899; *see also id.* at 898 ("[I]t is logical that those acts [by a deputy] should enjoy the same immunity covering the sheriff's own acts.").

Exceptions to state immunity do exist.  State immunity does not preclude actions against a deputy sheriff that are brought "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute." *Ex parte Haralson*, 853 So. 2d 928, 932 (Ala. 2003) (quoting *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)).  But it is clear that all of those situations involve prospective injunctive or declaratory relief—not an award of monetary damages as now at issue.  Although Plaintiff claims that Deputy Watkins is not entitled to state immunity because he allegedly acted in bad faith (Doc. 30 at p. 8, ¶ 1), "[t]his argument reflects a misunderstanding of the nature of the exceptions to immunity under the Alabama Constitution."

8

*Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990).  As held by the Alabama Supreme Court, a sheriff [or deputy] may only be sued to *enjoin* him from acting in bad faith." *Id*.  (italics in original).

Deputy Watkins operates as the alter ego of the Sheriff of Autauga County and is a state officer entitled to share fully in the state's immunity from civil actions for alleged conduct within the line and scope of his employment.  *See Ex parte Sumter County*, 953 So. 2d at 1239-40. Accordingly, to the extent Plaintiff is seeking monetary damages against Deputy Watkins on any state law theory (Claims Two, Nine, Ten, Twelve, and Thirteen), Deputy Watkins is due to be dismissed as a defendant.  *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996).

Deputy Watkins additionally is entitled to sovereign immunity against any award of monetary damages on the federal claims being asserted against him in his official capacity. Official capacity suits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, a state employee may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996).  Regarding the claims now being asserted, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr*, 916 F.2d 1521).  Accordingly, Deputy Watkins is entitled to sovereign immunity as to all claims seeking monetary damages from him in his official capacity. *See Selensky v. Alabama*, 619 F. App'x 846, 848 (11th Cir. 2015) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].")*; Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277  (11th Cir. 1998) (holding

that state officials in their official capacities are protected under the Eleventh Amendment from suits for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### C. Dismissal of McGowin is appropriate as to Claim One.

Claim One is styled "Acts in excess of Amendment I; Retaliation for speech" and appears to be asserted pursuant to 42 U.S.C. § 1983. (Doc. 21 at p. 11). "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005); *Bell v. Sheriff of Broward County*, 6 F.4th 1374, 1376-77 (11th Cir. 2021) ("[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.") (quoting *Nieves v. Bartlett*, 587 U.S. —, 139 S.Ct. 1715 (2019)).

Plaintiff asserts that "McGowins' [sic] Prohibition on plaintiff's speech is properly pled and articulates McGowins' [sic] involvement clearly." (Doc. 29 at p. 3, ¶ 3). According to the allegations in the amended complaint, McGowin falsely informed Deputy Watkins that Plaintiff and Galloway were "arguing" inside the Autauga County Sheriff's Office and instructed them to be quiet. (Doc. 21 at p. 5, ¶ 16; *Id.* at p. 11, ¶ 53). Plaintiff denies that he was arguing with Galloway at the time and contends that he simply was "asking [McGowin] why [h]e was being locked inside the sheriff[']s office" when McGowin in response told him to "be qui[e]t and have a seat." (Doc. 29 at p. 3, ¶ 3). Plaintiff further asserts that "McGowin then retaliated against [my] protected freedom of speech by telling Defendant Watkins that an argument had occurred." (*Id.*).

Assuming without deciding that Plaintiff's speech was constitutionally protected, the degree of protection owed is dependent upon the type of public premises at issue:

> The ability of the government to constrain First Amendment activity on public property depends on the type of forum involved; thus, we analyze restrictions of expressive activity on government property using the public forum doctrine, under which government property is categorized as a traditional public forum, a designated public forum, or a nonpublic forum. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45-46, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983); *see also Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678-79, 112 S.Ct. 2701, 2705, 120 L.Ed.2d 541 (1992). Each type of forum is governed by a different set of standards. In a nonpublic forum—public property that is "not by tradition or designation a forum for public communication"—the government may reserve the forum for its intended purposes and impose time, place, and manner regulations. *Perry,* 460 U.S. at 46, 103 S.Ct. at 955. If these regulations on speech are reasonable and viewpoint neutral, there is no First Amendment violation. *See id.*

*Watkins v. U.S. Postal Emp.*, 611 F. App'x 549, 551 (11th Cir. 2015). Because a law enforcement facility such as the Autauga County Sheriff's Office cannot be said to constitute a "public forum," any restriction upon Plaintiff's speech need be examined only for reasonableness and viewpoint neutrality. *Id.*; *see also Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 799-800, (1985) ("Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." ).

The facts alleged in the amended complaint provide no detail as to what Plaintiff said or any assertion that McGowin did more to restrain Plaintiff's speech than tell him to be quiet. And Plaintiff acknowledges that McGowin has explained under oath that she asked him not to speak because the situation was "disturb[ing] her from doing her Job." (Doc. 21 at p. 11, ¶ 53). Nothing in the alleged facts makes McGowin's directive appear unreasonable or viewpoint based. *See United States v. Kokinda,* 497 U.S. 720, 727 (1990) (plurality opinion) ("[R]egulation of speech activity where the Government has not dedicated its property to First Amendment activity

is examined only for reasonableness."); *see also Watkins*, 611 F. App'x at 552 ("We find that singing aloud disrupts the normal activity of the post office, irrespective of the song's content or the viewpoint contained therein.").

With respect to the allegation of retaliation, a plaintiff must plead "that the defendant's retaliatory acts are such as would chill a person of ordinary firmness." *Watkins*, 611 F. App'x at 1253.  The Eleventh Circuit has explained that the objective standard "allows for a 'weeding out' function when the injuries complained of are trivial or amount to no more than *de minimis* inconvenience in the exercise of First Amendment rights."  *Id*.  Plaintiff's assertion here is that McGowin acted in response to his protected speech by falsely informing Deputy Watkins that he and Galloway were "arguing."  (Doc. 21 at p. 5, ¶ 16; *Id*. at p. 11, ¶ 53).  Such an allegation reflects at most the type of "trivial" or "*de minmis*" circumstance that the Eleventh Circuit has cautioned against finding to rise to the level of a constitutional violation.  Moreover, Plaintiff's factual allegations reflect that Deputy Watkins's subsequent decision to arrest him was made independently and not as the result of any statements by McGowin.  (*Id.* at p. 7, ¶¶ 27-30).

 Even if a cognizable First Amendment claim otherwise had been stated, the allegations in the amended complaint reflect that McGowin nonetheless would be entitled to qualified immunity on Claim One:

> "Qualified immunity offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).  In considering whether an official is entitled to qualified immunity, the court must decide whether the facts alleged show the defendant violated a constitutional right and whether the right was clearly established. *Id.* at 715.

*Watkins*, 611 F. App'x at 551.  Here, there was no clearly established law that would have put McGowin on notice that she could not instruct Plaintiff to be quiet while inside the premises of the Autauga County Sheriff's Office.  Nor was there any clearly established law that would have afforded her notice that she could not tell Deputy Watkins that Plaintiff had been involved in an argument.  *See Reichle v. Howards*, 566 U.S. 658, 664 (2012) ("To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. ... In other words, existing precedent must have placed the statutory or constitutional question beyond debate.") (citations and internal quotation marks omitted) (alteration in original); *see also Corbitt v. Vickers*, 929 F.3d 1304, 1311-12 (11th Cir. 2019).

### D.  McGowin is due to be dismissed as to all state law claims.

#### i.  Claim Two

Claim Two is based upon a common law theory of fraud.  (Doc. 21 at p. 13).  Under Alabama law, "[t]he elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation."  *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Nat. Res.*, 986 So. 2d 1093, 1114 (Ala. 2007).  McGowan argues that Claim Two is due to be dismissed for failure to plead facts supporting the essential element of reliance.  (Doc. 24 at p. 11).

The amended complaint asserts that "plaintiff relied on the public officials of Autauga County to be truthful as required by law in not only: sworn testimony, documents, and or affidavits; for the purpose of maintaining his innocence, and to avoid the fraudulent prosecution that came because of their initial fraud."  (Doc. 21 at p. 14, ¶ 64).  However, nowhere has Plaintiff alleged that he relied to his detriment upon any specific false statement <u>by McGowin</u>.  Without such factual averments, Claim Two is due to be dismissed for failure to state a claim.  *See*

*Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 5 (Ala. 2004) ("[T]o state a fraud claim, [the plaintiff] must show that a misrepresentation induced him to act in a way that he would not otherwise have acted, that is, that he took a different course of action because of the misrepresentation.").

### iii.  Claim Nine

Claim Nine is styled "Common Law Tort: Malicious Prosecution."  (Doc. 21 at p. 22). Such a claim requires the following showing:

> (1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding.

*Delchamps, Inc. v. Bryant,* 738 So. 2d 824, 831-32 (Ala.1999).  As to McGowin, Plaintiff claims that "Watkins with the aid of McGowin, proceeded to prosecute Plaintiff with no probable cause based upon clearly fraudulent, unsubstantiated and falsified allegations fully manufactured by Watkins and McGowin where said defendant made assertions of arguing and violence that never existed."  (Doc. 21. at p. 22, ¶ 109) (emphasis added).

Yet Plaintiff makes no allegation that McGowin arrested him, that McGowin had authority to arrest him, that McGowin asked anyone else to arrest him, that McGowin initiated any charges against him, or that McGowin participated in his prosecution.  To the contrary, Plaintiff alleges that the decision to arrest and charge him was made by Deputy Watkins based upon Deputy Watkins's personal interactions with Plaintiff and Galloway inside the Autauga County Sheriff's Office.  (Doc. 21 at p. 7, ¶¶ 27-30).  Because there is no allegation that "a prior judicial proceeding was instituted by the present defendant," *i.e.*, McGowin, Plaintiff's claim against McGowin in Claim 9 is due to be dismissed.  *See Delchamps,* 738 So. 2d at 831.

### iv.  Claim Ten

Claim Ten seeks redress for "Abuse of Process," alleging that "[t]he arrest and subsequent prosecution were retaliatory to Plaintiff's protected speech, where Plaintiff simply requested police assistance, and was substantially based on race." (Doc. 21 at pp. 22-23, ¶ 112).  Dismissal is requested on the basis that "the criminal prosecution against Plaintiff was initiated and maintained for the purpose of obtaining a conviction against him" and because "Plaintiff has not alleged any other hidden goal."  (Doc. 24 at p. 17).

The tort of abuse of process addresses the "wrongful use of process after it has been issued."  *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998).  "It is the malicious perversion of a regularly issued process to accomplish a purpose whereby a result not lawfully or properly obtainable under it is secured."  *Duncan v. Kent*, 370 So. 2d 288, 290 (Ala. 1979).  To succeed on an abuse of process claim under Alabama law, a plaintiff must show (1) the existence of an ulterior purpose, (2) a wrongful use of process, and (3) malice.  *Hagood*, 711 So. 2d at 950.  A plaintiff thus bears the burden of showing that the process was not merely the result of ill will, but that the process was used for an illegal purpose.  *Warwick Dev. Co. v. GV Corp.,* 469 So. 2d 1270, 1274 (Ala. 1985).  Liability only attaches "if the [underlying] suit is brought, not to recover on the cause of action stated in the complaint, but for a collateral purpose." *Duncan*, 370 So. 2d at 290. The crux of an abuse-of-process case is "whether there was an ulterior purpose in filing this action and a willful act in the use of process not proper in the regular conduct of the proceeding."  *Id.*

Plaintiff has failed to allege any collateral purpose that motivated a wrongful use of process after proceedings were initiated.  No allegation is made that any procedure subsequent to Plaintiff's arrest was designed to accomplish a purpose collateral to the criminal process itself.  Nor is any

allegation made that <u>McGowin</u> participated in the use of any process against Plaintiff.  Count Ten therefore fails to state a claim against McGowin upon which may be granted.

### v.   Claim Twelve

Claim Twelve purports to state a claim for tortious breach of contract.  (Doc. 21 at p. 24).  According to Plaintiff, "[s]aid contract, known as an oath, makes the guarantee that Defendants will adhere to and support the limitations of constitution, which Defendants did not and are in breach thereof."  (*Id*. at ¶ 121).  Dismissal of Claim Twelve is sought on grounds that "an oath of office is not a contract."  (Doc. 24 at p. 17).  The undersigned likewise is aware of no authority that would permit a private cause of action for a state official's action contrary to his oath of office.  Because Plaintiff has provided no authority to support an independent cause of action under a theory of contract, Claim Twelve is due to be dismissed.

### vi.   Claim Thirteen

Claim Thirteen purports to state a claim for intentional infliction of emotional distress.  (Doc. 21 at p. 25).  To state a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it.  *See Jackson v. Alabama Power Co.*, 630 So. 2d 439, 440 (Ala. 1993).  Such a claim has been described as arising only from conduct that goes "beyond all possible bounds of decency" so as to be regarded as "atrocious and utterly intolerable in a civilized society."  *American Road Service Co. v. Inmon,* 394 So. 2d 361, 365 (Ala. 1981).  And the Alabama Supreme Court has cautioned that "outrage is a very limited cause of action that is available only in the most egregious circumstances."

*Thomas v. BSE Indus. Contractors, Inc.,* 624 So. 2d 1041, 1044 (Ala. 1993); *see also Saville v. Houston County Healthcare Auth.,* 852 F. Supp. 1512, 1541 (M.D. Ala. 1994).

Here, Plaintiff contends that his arrest "was intended to cause Plaintiff stress, forcing Plaintiff to publicize Plaintiff[']s sexuality and was intended to humiliate Plaintiff simply because Watkins did not want to do his job." (Doc. 21 at p. 26, ¶ 127).  Those allegations, however, do not fall within the limited categories of conduct that have been deemed sufficiently outrageous to support claims for intentional infliction of emotional distress:

> The three categories of viable outrage claims in Alabama are (1) wrongful conduct in the context of family burials, *see Whitt v. Hulsey,* 519 So. 2d 901 (Ala.1987) (holding jury question precluded summary judgment on outrage claim where defendant desecrated family burial ground of adjacent landowner); (2) insurance agents using heavy-handing tactics to force insureds to settle claims, *see Nat'l Sec. Fire & Cas. Co. v. Bowen,* 447 So. 2d 133 (Ala. 1983) (allowing outrage claim to go forward where insurance investigators threatened to kill plaintiff's two small sons, told plaintiff he would look good lying beside his dead brother, and drove plaintiff out into the woods at gun point and threatened to kill him); and (3) egregious sexual harassment, *see Busby v. Truswal Sys. Corp.,* 551 So. 2d 322 (Ala. 1989) (finding summary judgment improper where defendant made lewd sexual remarks to and gestures at female employees, touched the women inappropriately, and followed one of them home one night).

*Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1230 (M.D. Ala. 2012*); see also O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011).  Nor do Plaintiff's allegations otherwise rise to the level of being deemed "beyond all possible bounds of decency." *Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (11th Cir. 2011) (finding no outrageous conduct where a police officer entered the plaintiff's home without exigent circumstances or probable cause and arrested the plaintiff, who was wearing only a towel); *see also Rubio v. Lopez*, 445 F. App'x 170, 172-73 (11th Cir. 2011) (per curiam) (holding conduct not outrageous after officers arrested a defendant, forced him down onto hot asphalt, and hobble-tied him with his chest and face against the pavement.).  Claim Thirteen therefore is due to be dismissed.

**E.  All due process claims are due to be dismissed.**

Defendants assert that "Claims Five, Six, and Eleven all appear to be brought at least partially under general due process principles under the Fifth and/or Fourteenth Amendments to the United States Constitution."  (Doc. 24 at p. 9).  The referenced claims are respectively styled "Acts in excess of Amendment IV, V, XIV; Unlawful Imprisonment" (Doc. 21 at p. 17), "Acts in excess of Amendment V, XIV, Punishment without due process of law" (*Id.* at p. 18), and "Acts in Excess of Amendment XIV; Due Process Discovery; Brady Violation" (*Id.* at p. 23).

    **i.   Claim Five**

Claim Five alleges that "McGowin imprisoned Plaintiff by locking Plaintiff in the Sheriff's Department" and that "McGowin lacks all authority to arrest and detain Plaintiff, much less to imprison Plaintiff without due process of law."  (Doc. 21 at p. 17, ¶ 84).  For her part, McGowin has not sought to be dismissed from Claim Five.  (Doc. 23 at p. 1, ¶ 1).  Although Plaintiff also appears to request damages against Deputy Watkins in Claim Five (Doc. 21 at p. 18, ¶ 88), no other reference to Deputy Watkins appears within the paragraphs comprising Claim Five. Accordingly, and with Autauga County being dismissed as to all claims, Claim Five should proceed only as to McGowin.[1]

    **ii.   Claim Six**

Plaintiff asserts in Claim Six that "Defendant Watkins, without warrant, arguable probable cause and/or due process, unlawfully arrested Plaintiff and, acting contrary to law, falsely imprison[ed] Plaintiff, depriving Plaintiff of Liberty and punishing Plaintiff without due process

---

[1] It is noted that Claim Three asserts a similar false imprisonment type claim but expressly names Deputy Watkins.  Therefore, even if Claim Five included allegations against Deputy Watkins, the undersigned would recommend that Claim Five be dismissed as to Deputy Watkins on the basis that it was duplicative of Count Three.

of law." (*Id.* at pp. 18-19, ¶ 90).  Those allegations appear fundamentally identical to the Fourth Amendment theory asserted against Deputy Watkins in Claim Three and cannot be repackaged as an alleged violation of "due process."  *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1988)  ("[I]f a constitutional claim is covered by a specific constitutional provision … the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (quoting *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997)); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (holding that a claim alleging arrest and prosecution without probable cause sounded only under the Fourth Amendment).

### iii.   Claim Eleven

Claim Eleven purports to state a cause of action for "Acts in Excess of Amendment XIV; Due Process Discovery; Brady Violation."  (Doc. 21 at p. 23).  Viewing the allegations in a generous light, it appears Plaintiff is intending to bring a claim for violation of *Brady v. Maryland,* in which the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).  Regarding such *Brady* claims, the Eleventh Circuit has stated:

> To prove a *Brady* violation, a defendant must establish three elements: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) this favorable evidence was "suppressed by the State, either willfully or inadvertently"; and (3) the defendant suffered prejudice as a result.  *Allen v. Sec'y, Fla. Dep't of Corr.,* 611 F.3d 740, 745-46 (11th Cir. 2010) (internal quotation marks omitted). To establish prejudice (also referred to as materiality), a defendant must demonstrate "'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Id.* at 746 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)).

*Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 258 (11th Cir. 2013).   In this case, Plaintiff cannot successfully plead a cause of action pursuant to *Brady* because he admits that his criminal case terminated with an acquittal on all charges.   (Doc. 21 at p. 10, ¶ 41).   *See Morgan v. Gerz*, 166 F.3d 1307, 1310 (10th Cir. 1996) (explaining that where "all criminal charges were dismissed prior to trial …, courts have held universally that the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983.") (citations omitted).

## V.   Conclusion

For the reasons set forth above, the Magistrate Judge hereby **RECOMMENDS** that the pending motion (Doc. 23) be **GRANTED IN PART** as follows:

- that Autauga County be dismissed as a defendant on all claims;

- that Deputy Watkins be dismissed entirely on all state law claims (Claims Two, Nine, Ten, Twelve, and Thirteen) due to the immunity afforded him under Article I, § 14 of the Alabama Constitution;

- that Deputy Watkins be dismissed in his official capacity on all of the surviving federal law claims for monetary damages (Claims One, Three, and Four);

- that McGowin be dismissed entirely on Claims One, Two, Nine, Ten, Twelve, and Thirteen due to Plaintiff's failure to state a claim; and

- that paragraphs 37, 38, and 131 of the amended complaint (Doc. 21) be struck pursuant to Fed. R. Civ. P. 12(f).[2]

The Magistrate Judge further **RECOMMENDS** that the remainder of the pending motion (Doc. 23) be **DENIED**.   If all of the foregoing recommendations are adopted, this action would proceed against Deputy Watkins in his individual capacity on Claims One, Three, and Four,

---

[2] The amended complaint lists a number of private citizens as purported comparators to show an alleged racial disparity in the setting of bond amounts.   The undersigned agrees with Defendants that "[a]lthough the information stated about individuals' bond is a matter of public record, Plaintiff's attempt to drag other non-parties into this litigation … is irrelevant … ."   (Doc. 24 at p. 15).

and against McGowin on Claim Five.[3]   The relief available to Plaintiff on the surviving claims would be limited to that recoverable under 42 U.S.C. § 1983.

It is **ORDERED** that any objections to this Recommendation must be filed by **March 19, 2024**.  An objecting party must identify the specific portion(s) of factual findings or legal conclusions to which objection is made and must describe in detail the basis for each objection.  An objecting party also must identify any claim or defense that the Recommendation has not addressed.  Frivolous, conclusive, or general objections will not be considered.

After receiving all objections, the District Judge will conduct a *de novo* review of the findings or recommendations to which objection is made.  The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings.  *See* 28 U.S.C. § 636(b)(1)(C).  A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations.  The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice.  *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 5th day of March 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] The undersigned notes that Deputy Watkins was not named as a defendant to Claims Seven, Eight, or Fourteen and that McGowin was not named as a defendant to Claims Three, Four, Six, Seven, Eight, or Fourteen.  McGowin has not sought to be dismissed in her official capacity.